**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**MELINDA DAMERON**                                                             **PLAINTIFF**

**v.**                            **CASE NO. 3:19-CV-00150-JTK**

**ANDREW SAUL,[1] Commissioner,
Social Security Administration**                                       **DEFENDANT**

**ORDER**

**I.    Introduction:**

On July 6, 2017,[2] Plaintiff Melinda Dameron applied for supplemental security income (SSI) alleging disability beginning on January 14, 2017. (SSA record "R." at 15). Dameron's claims were denied initially (R. 15, 48-49, 57) and upon reconsideration. (R. 15, 58-59, 70). After conducting a hearing, the Administrative Law Judge[3] (ALJ) denied the application. (R. 15-23). The Appeals Council denied Dameron's request for review (R. 1-6); therefore, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[4] affirms the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to FED. R. CIV. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] In her opinion, the ALJ cited the application date as the date Dameron hired counsel (R. 15, 71); however, the SSA reflects a filing date of August 11, 2017. (R. 142).

[3] The Honorable Toni Shropshire.

[4] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 4)

## II.     The ALJ's Decision:

The ALJ found that Dameron had not engaged in substantial gainful activity since July 6, 2017, and that she had the following severe impairments: ischemic heart disease and congestive heart failure. (R. 17).

After finding that Dameron's impairments did not meet or equal a listed impairment (R. 17), the ALJ determined that she had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a). (R. 18). Additionally, the ALJ determined Dameron could never climb ladders and must avoid concentrated exposure to high humidity and extreme heat and cold. (*Id.*).

The ALJ determined that Dameron was unable to perform her past relevant work as a babysitter. (R. 21-22). The ALJ further relied on a Vocational Expert (VE) who testified that, based on Dameron's age, education, work experience, and RFC, she was capable of performing work in the national economy as a sorter or document preparer. (R. 23). Based on the above, the ALJ held that Dameron was not disabled. (R. 23).

## III.    Discussion:

### A.    Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019); *see also* 42 U.S.C. § 405(g). "Substantial evidence" in this context means enough that "a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citing *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016)). In making this determination, the court must consider not only evidence that supports the Commissioner's decision, but also, evidence

that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence would have supported an opposite decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal citation omitted).

  B. Dameron's Arguments on Appeal

In this appeal, Dameron contends that substantial evidence does not support the ALJ's decision to deny benefits. Within that argument she asserts the ALJ failed in four ways: erroneously considering treating and non-examining medical opinions; failing to develop the record by obtaining an opinion from any of her treating doctors upon which she would rely; erroneously "playing doctor" when determining Dameron's RFC; and, as a result, failing to provide substantial evidence at Step 5 for the jobs finding. (#12 at 2).

  C. Decision

    1. Medical Opinions

Ms. Dameron first asserts that the ALJ failed to order consultative physical or cardiology exams to determine the depth of her heart impairments. (Doc. 12 at 8, 12-16). She argues that the only medical opinion was from APN David Blount and contends the ALJ's explanation that Blount's opinion was not persuasive in light the overall record is legally deficient. (*Id.*)

An ALJ will give a treating physician's opinion controlling weight only if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other substantial evidence. *Nowling v. Colvin*, 813 F.3d 1110, 1122-23 (8th Cir. 2016) (internal citations omitted). That opinion, however, "does not obviate the need to evaluate the record as a whole." *Id*. (internal citation omitted). Rather,

an ALJ may disregard the opinion of a treating physician when it appears inconsistent with the evidence. *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (citing *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)). "Moreover, a treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the Commissioner to make the ultimate determination of disability." *Davidson*, 578 F.3d at 842.

While the non-examining disability screeners are cited, the ALJ did not rely exclusively on their opinions to the exclusion of Blount's opinion or Dameron's medical records. Rather, the ALJ considered Blount's opinion but did not find it persuasive in light of the record evidence. (R. 21) The ALJ properly considered the opinions of the consulting and reviewing doctors and did not err by finding those opinions "somewhat persuasive" because they were consistent with the objective medical evidence. (R. 21).

Objective tests did not show disabling medical conditions. In January 2017, Dameron was seen by Blount for complaints of decreased energy and chest pain. (R. 382-83). Blount noted Dameron was in no acute distress and had normal EKG results but referred her to a cardiologist for further testing. (*Id*.). At that time, Dameron had no known history of coronary artery disease but the cardiologist noted Dameron was a chronic smoker reporting smoking one-to-two packs of cigarettes a day for 23 years. (R. 273, 278). After undergoing a cardiac catherization, the cardiologist determined Dameron had "severe 3-vessel coronary disease" and, she subsequently underwent a triple-bypass surgery requiring an 11-day hospitalization. (R. 268-270, 278, 281). Her discharge instructions included no lifting, pushing, or pulling anything greater than five pounds for

at least 8 weeks, no driving for five weeks, and instructions for following both a heart-healthy diet and to quit smoking. (R. 268-69). Although Dameron was fitted with a life-vest, she reported not regularly using it due to discomfort. (R. 369).

At a follow-up visit in April 2017, Dameron's cardiologist noted that she was "doing quite well" despite having resumed smoking and being unwilling to quit. (R. 360). The cardiologist advised Dameron that she could quit wearing the life vest if positive LV functions were determined and instructed her to return in a year. (*Id.*). Dameron saw her primary care physician in May 2017, and reported she had no chest pain or dizziness, had been very active, and had been tolerating the increased activity. (R. 391).

In October 2017, Dameron saw her primary care physician and again reported no chest pain or dizziness and minimal swelling. (R. 414) In fact, Dameron reported that she walked 2 miles daily. (*Id.*) Despite Dameron's reports to her primary-care physician, the following day, Blount completed a medical source statement. In it, Blount concluded that Dameron could not lift or carry more than 10 pounds, could only stand or walk for about 30 minutes without a break, and could not sit for more than two hours a day without a break. (R. 401-03). Blount reported that Dameron would need to elevate her feet, would need longer than normal breaks, frequent rests, need to avoid humidity and extreme temperatures, and that her medication could cause dizziness and fatigue. (R. 402).

In January 2018, Dameron reported increased inactivity due to fatigue. (R. 412). And, at her one-year follow up with her cardiologist, Dameron reported lower leg swelling that required elevation for relief and chronic shortness of breath. (R. 423). Despite her complaints, her cardiologist prescribed that she simply continue her

medications, encouraged "activity/exercise education" as well as "diet education," and instructed her to return in a year. (R. 426-28); *see Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (encouragement to exercise constitutes evidence to support the ALJ's findings). Further, despite completing tobacco cessation counseling, Dameron reported in April 2018 to still smoking half-a-pack of cigarettes daily. (R. 420, 426); *see Kisley v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

Substantial evidence supported the ALJ's finding that Dameron's heart problems, either or alone or in combination with her other impairments, was not severe. (R. 18) Further, the ALJ correctly noted that, following her heart surgery in January 2017, Dameron "maintained normal physical functioning, including a normal gait, intact extremity findings, and normal cardiopulmonary signs." (R. 20)

Further, Dameron stated that she had no problems taking care of herself, performed housework, prepared meals, could drive herself, went shopping, handled her finances, read, and watch tv. (R. 21, 38-39, 200-07) Such daily activities undermine her claims of disability. *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (citing *Wagner v. Astrue*, 499 F.3d 842, 852 8th Cir. 2007)). The ALJ thoroughly discussed Dameron's impairments in combination. She weighed Blount's opinion against the opinions of the state-agency reviewing physical (whose opinions were less restrictive than the RFC), and properly found that Dameron was not disabled.

2. Failure to Develop the Record

In her second point, Dameron expands on her first by arguing that the ALJ also failed to attain "highly relevant EKG results" performed in April 2018. (Doc. 12 at 16). Specifically, she again contends that the ALJ erred by not expanding the record arguing it contained nothing to support the finding that she could perform sedentary work. (*Id*. at 17).

Dameron was represented by counsel at the August 2018 hearing before the ALJ. At that hearing, her counsel produced all of her medical records and stated that the record was complete. (R. 30). Despite this statement, Dameron now contends that the ALJ erred in not obtaining the results of an EKG test performed months before her hearing.

The record here contains sufficient evidence upon which the ALJ made an informed decision; thus, she was not required either to obtain a consultative physical or to contact Dameron's treating physicians. While an ALJ does have a basic duty to develop a reasonably complete record, *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)), the ALJ is only required to contact a treating or consulting physician or to order further testing *if* the medical records presented do not provide sufficient evidence to make an informed decision on disability. *Martise*, 641 F.3d at 926-7 (emphasis added). Moreover, absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Here, the record contained sufficient evidence to make an informed decision on whether or not Dameron was disabled. Again, Dameron was given no limitations by her

cardiologist or by her primary care physician. (R. 413, 421, 426-27) In fact, she was encouraged to exercise. (R. 413, 421) "[A] physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Finally, as discussed above, the ALJ explained why she found Blount's opinion unpersuasive and supported that finding not only with the opinions of the reviewing medical examiners but also with Dameron's testimony at the hearing as well as with her treating physicians' observations and clinical notes in treating her. For all these reasons, the ALJ did not need to further develop the record because the balance of the record was in agreement.

      3.     RFC

Dameron next claims that the ALJ failed to rely on medical evidence to support the RFC for sedentary work and failed to make a finding regarding persistence and pace. (Doc. 12 at 17-18). A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations. It must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). "In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v .Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

As discussed previously, the ALJ properly evaluated Dameron's subjective complaints as well as the medical evidence. Dameron's beliefs that she is disabled were inconsistent with the record evidence. As noted above, the records reflected that she

positively responded to the heart surgery. While the State agency physicians determined that Dameron could perform a full range of sedentary work (R. 54-56, 67-69), the ALJ considered all the evidence, including Dameron's testimony and Blount's recommendations and assigned her greater restrictions than those suggested by the agency physicians. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Rather, she was encouraged to maintain a heart healthy diet and to exercise. A physician's recommendations to increase physical exercise are inconsistent with a claim of physical limitations. *Myers*, 721 F.3d at 527.

Here, the ALJ considered Blount's opinion, the state-agency medical opinions, as well as Dameron's own testimony. The ALJ considered Dameron's age, education, and activities of daily living and properly determined that she could perform sedentary work with some limitations. See *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (medical evidence, state-agency physician opinions, and the claimant's own testimony were sufficient to determine residual functional capacity). Substantial evidence supports the ALJ's RFC determination.

4. Vocational Hypothetical Used to Support Step 5 Finding

In Dameron's final argument, she asserts that the vocational hypothetical posed to the VE was legally deficient because it was premised on an erroneous RFC finding. (R. 12 at 19). Each step of the sequential process serves a distinct purpose, "the degrees of precision required at each step differ," and the deferential standard of review precludes the Court from labeling findings as inconsistent if they can be harmonized. *Chismarich v.*

9

*Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888, n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.").

The Court is persuaded that that the ALJ's hypothetical was adequate. "The testimony of a VE identifying jobs available to a claimant will constitute substantial evidence at this stage 'when it is based on a hypothetical that accounts for all the claimant's <u>proven</u> impairments.'" *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (citing *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (emphasis added). The records support the ALJ's determination.

### IV.  <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny SSI benefits. The RFC incorporated all of Dameron's limitations that were supported by the evidence, and the ALJ properly evaluated Dameron's subjective complaints. The ALJ made no legal error. For these reasons, Dameron's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

IT IS SO ORDERED this 23rd day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE